STATE ex rel. Harvey WALKER, Jr., M.D., Ph.D., Appellant,

v.

MISSOURI STATE BOARD OF REGISTRATION FOR the HEALING ARTS, Respondent.

No. 68583.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 28, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Arlene Zarembka, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Evan Buckheim, Asst. Atty. Gen., Jefferson City, for respondent.

GERALD M. SMITH, Presiding Judge.

This is an appeal from a judgment of the Circuit Court of St. Louis County dismissing appellant's petition for a writ of prohibition, declaratory judgment and injunction against the Board of Healing Arts ("the Board"). Appellant, Dr. Harvey Walker, ("Walker") sought to prevent the Board from holding a probable cause hearing under § 334.100.2(25) RSMo 1994 regarding Walker's competency to practice medicine.

The facts have been stipulated to by the parties. Walker has been in private practice in the St. Louis area since 1957. Since 1968, he has practiced medicine at Preventive Medicine, Inc. in Clayton, Missouri, with an emphasis on preventive medicine, nutrition, and food intolerance.

In September, 1994, the Board sent a letter to Walker stating that the Board "has received information which could result in the initiation of formal legal proceedings against your Missouri license as a physician and surgeon." The Board offered Walker the option of retiring his medical license "in lieu of any further administrative or legal proceedings" against him. Walker declined to retire his license.

Thereafter, the Board issued a notice and subpoena to Walker ordering him to appear before the board for a closed hearing investigating Walker's "overall ability to practice as a physician and surgeon, or with a specialty, with reasonable skill and safety to patients pursuant to Section 334.100.2(25) RSMo. Supp.1990." The notice indicated that Walker could have legal counsel accompany him to the hearing.

Walker requested that the hearing be conducted as a contested case pursuant to Chapter 536, RSMo. He further requested a panoply of information from the Board as well as subpoenas.

The Board advised Walker the hearing to be held was pursuant to § 334.100.2(25)(a) in order to determine if probable cause exists to question Walker's general competency to practice medicine. At the hearing, members of the Board would "ask Dr. Walker questions to test his basic knowledge of medicine, including questions regarding how he would

treat patients in hypothetical situations presenting with particular symptoms." The Board "will base its decision only on Dr. Walker's answers to its questions during the probable cause hearing." The Board advised that it would not present any witnesses or evidence during the hearing; that no subpoenas would be issued to Walker as requested unless he "can demonstrate in writing prior to the hearing the need for having these subpoenas;" and that Walker would not be permitted to present any witnesses unless he "can demonstrate in writing prior to the hearing the need for calling such witnesses."

Before the Board could hold a probable cause hearing, Walker filed a petition for writ of prohibition, declaratory judgment, and for preliminary and permanent injunction in the circuit court. Walker alleged that the Board's proposed procedure violated his due process rights, and violated chapter 621 and chapter 536 RSMo. After an initial preliminary order the court dismissed the petition.

Before addressing Walker's points on appeal, we will examine the statutory procedure for determining general medical incompetency. This procedure was recently outlined by the Missouri Supreme Court in *Artman v. State Board of Registration for the Healing Arts*, 918 S.W.2d 247 (Mo.banc 1996). Section 334.100.2 governs physician discipline. It begins:

> The board may cause a complaint to be filed with the administrative hearing commission as provided by chapter 621, RSMo, against any holder of any certificate of registration or authority, permit or license required by this chapter ... for any one or any combination of the following causes:

After various specific causes for discipline, subdivision (25) lists the general cause: "Being unable to practice as a physician and surgeon ... with reasonable skill and safety to patients by reasons of medical or osteopathic incompetency." § 334.100.2(25). The action against Walker, like that in *Artman*, is being pursued as a general incompetency proceeding under § 334.100.2(25).

In *Artman*, the court stated that although subsection 2 of § 334.100 generally requires that a complaint be filed with the Adminis-

trative Hearing Commission (AHC), subdivision (25)(e) specifically exempts medical incompetency proceedings from the AHC's jurisdiction. *Artman, supra* at [1, 2]. "Where the charge is general medical incompetency rather than specific medical misconduct, the Board serves as investigator, prosecutor, judge, and jury." *Id.* Thus, under the statute, the Board can conduct a general medical incompetency proceeding without involving the AHC.

The first step in the proceeding is a probable cause hearing. Under § 334.100.2(25)(a), before disciplining a doctor for medical or osteopathic incompetency, the Board must, after a hearing, find probable cause to question the doctor's competency. The statute sets no standards for convening the probable cause hearing or for the type of evidence required. *Artman, supra* l.c. 250.

If after the hearing the Board finds probable cause, it can compel the physician to be reexamined to establish competency to practice medicine. *Id.;* § 334.100.2(25)(a). However, before a physician may be forced to undergo reexamination, the Board must send written notice. § 334.100.2(25)(d). Failure of a physician to submit to the examination when directed constitutes an admission of the allegations. *Id.* In such a case, the Board may enter a final order "without the presentation of evidence, unless the failure was due to circumstances beyond [the physician's] control." *Id.* Thus, a physician who refuses to submit to a reexamination upon a finding of probable cause is deemed to have admitted the allegations and the Board can summarily enter a final order which may revoke or suspend that physician's license. *See* § 334.100.2(25)(f)4. Presumably, if the physician does submit to a reexamination and is found competent based on the examination standards, no further action would be taken to discipline the physician's license.

If the physician fails the examination, however, the statute does not spell out a clear procedure to follow. The statute states merely that "[w]hen the board finds any person unqualified because of any of the grounds set forth in this subdivision, it may enter an order imposing one or more of the

disciplinary measures set forth in subsection 4 of this section." Subsection 4 then allows the board to suspend or revoke a physician's license, among other punishments. The statute does not state that a contested case hearing providing full due process rights must be held before a license can be revoked or suspended.

However, *Artman* makes clear that upon failure of the exam, the board must hold a contested case hearing before it can revoke or suspend a physician's license:

> So long as before a license is revoked, the physician has a meaningful hearing with notice and an effective opportunity to defend, due process is satisfied.

*Id.* at [6].

Thus, although there is no legislative provision requiring a contested case hearing upon failure of reexamination before a license can be revoked or suspended, such a hearing is required by *Artman*. The procedure followed by the Board has been judicially approved.

Walker concedes that under subsection (25) of § 334.100.2, the Board need not refer the case to the AHC. Walker argues, however, that this action should have been brought under subsection (5) rather that subsection (25), and thus the AHC should be involved.

The court in *Artman* studied subsection (25) and stated that "where the charge is general medical incompetence rather than specific medical misconduct, the Board serves as investigator, prosecutor, judge, and jury." The court also found that "the Board had statutory and constitutional authority to conduct medical incompetency proceedings without involving the AHC."

 Walker asserts that he has a property right in his medical license, and thus is entitled to due process in situations involving possible suspension or revocation of the license. That is true, but at the probable cause stage of the proceeding the full panoply of due process is not required. Giving notice to Walker of the hearing and allowing him to have counsel present was adequate. *Artman, supra* at [4, 5]. Prior to disciplining Walker's license the Board must afford him

due process. At this stage it need not do other than it has done.

Judgment affirmed.

GARY M. GAERTNER and RHODES RUSSELL, JJ., concur.